ELMORE, Judge.
 

 *113
 
 Attorney Jennifer Nicole Foster ("defendant") appeals from an order of discipline issued by the Disciplinary Hearing Commission ("DHC") of the North Carolina State Bar. In its order, the DHC determined that defendant violated Rules of Professional Conduct 3.5 and 8.4. The DHC thus imposed a two-year suspension of defendant's law license, stayed for the duration of the suspension so long as defendant complies with certain conditions. After careful review, we affirm the order of the DHC.
 

 *114
 

 I. Background
 

 Defendant was admitted to the North Carolina State Bar in 1995 and was practicing law in Asheville as of 2011. On the evening of 5 November 2011, defendant entered the magistrate's office in the Buncombe County Detention Center to inquire about arrest warrants that had been issued for several members of the Occupy Asheville movement. Defendant encountered Magistrate Amanda Fisher, one of two magistrates on duty at the time, and identified herself as an attorney there on behalf of the movement. Defendant then asked Magistrate Fisher "what the hell is going on around here" regarding the warrants. Magistrate Fisher warned defendant to watch her language and told her that she was in a courtroom. Defendant, however, maintains that Magistrate Fisher never mentioned the word "court" or warned defendant to watch her language.
 

 Office policy prohibited Magistrate Fisher from providing defendant with information regarding outstanding warrants on other individuals, but she did inform defendant there were no outstanding warrants on defendant herself. Defendant responded "what the f*** is going on around here," prompting Magistrate Fisher to renew her warning to defendant, but defendant nevertheless repeated the profanity multiple times. As Magistrate Fisher told defendant she was being held in contempt of court, defendant walked out of the magistrate's office, loudly repeating more vulgarities as she left.
 

 At Magistrate Fisher's request, detention officers stopped defendant from leaving the premises and returned her to the magistrate's office. The second magistrate on duty that evening appeared and witnessed the remainder of defendant's profanities while Magistrate Fisher entered the order for contempt. On 17 January 2012, defendant was convicted of direct criminal contempt of court following a 1 December 2011 hearing in Buncombe County Superior Court. Defendant appealed, and this Court ultimately reversed her conviction on procedural grounds.
 
 In re Foster
 
 ,
 
 227 N.C. App. 454
 
 ,
 
 744 S.E.2d 496
 
 ,
 
 2013 WL 2190072
 
 (2013) (unpublished).
 

 Based on these events, the State Bar filed a complaint against defendant with the DHC on 25 March 2014. The proceedings were continued pending federal action initiated by defendant against Magistrate Fisher, among others, and the DHC eventually held a hearing on 8 July 2016. In its order of discipline dated 13 September 2016, the DHC found that defendant's conduct violated Rules of Professional Conduct 3.5(a)(4)(B) and 8.4(d), and it stayed a two-year suspension of her license pending compliance with certain conditions (e.g., that defendant follow the recommendations and treatment program of her therapist). Defendant filed timely notice of appeal.
 

 *115
 

 II. Discussion
 

 Any attorney admitted to practice law in this state is subject to the disciplinary jurisdiction of the DHC for,
 
 inter alia
 
 , violation of the Rules of Professional Conduct adopted by the State Bar.
 
 N.C. Gen. Stat. §§ 84-28
 
 (a) - (b)(3) (2015). Either party may appeal a final order from the DHC to this Court, where our review is limited to "matters of law or legal inference."
 
 N.C. Gen. Stat. § 84-28
 
 (h).
 

 Disciplinary actions are reviewed under the whole record test.
 
 N.C. State Bar v. Talford
 
 ,
 
 356 N.C. 626
 
 , 632-33,
 
 576 S.E.2d 305
 
 , 309-10 (2003). The whole record test
 
 *922
 
 "requires the reviewing court to determine if the DHC's findings of fact are supported by substantial evidence in view of the whole record, and whether such findings of fact support its conclusions of law. Such supporting evidence is substantial if a reasonable person might accept it as adequate backing for a conclusion."
 
 Id
 
 . (citation omitted). In addition to being substantial, the evidence the DHC uses to support its findings and conclusions must be clear, cogent, and convincing.
 

 Id.
 

 (citing
 
 In re Suspension of Palmer
 
 ,
 
 296 N.C. 638
 
 , 648,
 
 252 S.E.2d 784
 
 , 790 (1979) ). Although the reviewing court must consider contradictory evidence, the presence of such evidence "does not eviscerate challenged findings, and the reviewing court may not substitute its judgment for that of the DHC. The DHC determines the credibility of the witnesses and the weight of the evidence."
 
 N.C. State Bar v. Adams
 
 ,
 
 239 N.C. App. 489
 
 , 495,
 
 769 S.E.2d 406
 
 , 411 (2015). Thus, when there are two reasonably conflicting views, " 'the whole record test does not allow the reviewing court to replace the DHC's judgment ... even though the court could justifiably have reached a different result had the matter been before it
 
 de novo
 
 .' "
 
 N.C. State Bar v. Sutton
 
 , --- N.C. App. ----, ----,
 
 791 S.E.2d 881
 
 , 890 (2016) (brackets omitted) (quoting
 
 N.C. State Bar v. Nelson
 
 ,
 
 107 N.C. App. 543
 
 , 550,
 
 421 S.E.2d 163
 
 , 166 (1992) ).
 

 A.
 
 Rule 3.5(a)(4)(B) Violation
 

 Rule of Professional Conduct 3.5 states in relevant part that "a lawyer shall not ... engage in conduct intended to disrupt a tribunal, including ... undignified or discourteous conduct that is degrading to a tribunal." N.C. R. Prof. Conduct 3.5(a)(4)(B). While defendant admits to disrespecting Magistrate Fisher, she argues that a magistrate is not a "tribunal" as defined in Rule 1.0(n), and thus denies disrespecting a tribunal in violation of Rule 3.5(a)(4)(B). At issue then is what constitutes a tribunal and whether a magistrate fits within the meaning of that definition as applied in Rule 3.5.
 

 *116
 
 Rule of Professional Conduct 1.0 defines certain terms that appear within the substantive rules. Under Rule 1.0(n),
 

 "Tribunal" denotes a court, an arbitrator in a binding arbitration proceeding, or a legislative body, administrative agency, or other body acting in an adjudicative capacity. The term encompasses any proceeding conducted in the course of a trial or litigation, or conducted pursuant to the tribunal's rules of civil or criminal procedure or other relevant rules of the tribunal, such as a deposition, arbitration, or mediation. A legislative body, administrative agency or other body acts in an adjudicative capacity when a neutral official, after the presentation of evidence or legal argument by a party or parties, may render a binding legal judgment directly affecting a party's interests in a particular matter.
 

 N.C. R. Prof. Conduct 1.0(n). While Rule 1.0 does not include the term "magistrate," a magistrate may be defined as a "judicial officer with strictly limited jurisdiction and authority, often on the local level and often restricted to criminal cases," and a magistrate's court is a "court with limited jurisdiction over minor criminal and civil matters."
 
 Black's Law Dictionary
 
 (10th ed. 2014).
 

 The North Carolina Constitution describes our General Courts of Justice to include appellate, superior, and district courts. N.C. Const. art. IV, § 2 ;
 
 see also
 
 N.C. Gen. Stat. § 7A-4 (2015). Magistrates are created in this article and declared "officers of the District Court." N.C. Const. art. IV, § 10 ;
 
 see also
 
 N.C. Gen. Stat. § 7A-170. They are nominated by the clerk of superior court and appointed by the senior resident superior court judge. N.C. Const. art. IV, § 10 ; N.C. Gen. Stat. § 7A-171(b). Magistrates must retire and may be removed on the same grounds as a judge of the General Courts of Justice. N.C. Gen. Stat. §§ 7A-170, 173. In sum, magistrates are judicial officers.
 
 See
 

 Bradshaw v. Admin. Office of Courts
 
 ,
 
 320 N.C. 132
 
 , 133,
 
 357 S.E.2d 370
 
 , 370 (1987) (holding that magistrates are "members of the judiciary" for limited purpose of statute making members ineligible for employment benefits).
 

 Most powers of magistrates are rooted in criminal law.
 
 See
 
 N.C. Gen. Stat. § 7A-273. Magistrates have the power to enter judgments for pre-determined infractions and
 
 *923
 
 misdemeanors; to issue arrest warrants, search warrants, and grant bail in certain cases; to conduct initial appearances; and to accept waivers, pleas, and enter judgments for certain worthless check cases.
 

 Id.
 

 ;
 
 see also
 
 N.C. Gen. Stat. §§ 15A-243, 304, 305 (2015). Additionally, magistrates have the power "[t]o punish
 
 *117
 
 for direct criminal contempt." N.C. Gen. Stat. § 7A-292(a)(2). Although the general statutes are silent about the physical office for magistrates, these can vary from small offices to large courtrooms, depending on the needs and budget of the district. John M. Conley & William M. O'Barr,
 
 Fundamentals of Jurisprudence: An Ethnography of Judicial Decision Making in Informal Courts
 
 ,
 
 66 N.C. L. Rev. 467
 
 , 477 (1988).
 

 The definitions and core functions described above and applied here indicate that a magistrate is a tribunal as that term appears in Rule 3.5. Consistent with Rule 1.0, the State Bar defines "tribunal" as a court or other adjudicative body that administers justice. Like a tribunal, a magistrate is an adjudicative body led by a judicial officer, but typically with limited jurisdiction over criminal or civil matters. However, it is clear based on the powers conferred upon them by our legislature that magistrates administer justice within their limited jurisdiction.
 

 The State Bar's definition of tribunal also includes "a court
 
 or other body acting in an adjudicative capacity
 
 ." N.C. R. Prof. Conduct 1.0(n) (emphasis added). "A ... body acts in an adjudicative capacity when a neutral official, after the presentation of evidence or legal argument by a party or parties,
 
 may render a binding legal
 

 judgment
 
 directly affecting a party's interests in a particular matter."
 
 Id
 
 . (emphasis added). Like a tribunal, a magistrate can render a binding legal judgment; she possesses the power to enter judgments for pre-determined infractions, misdemeanors, and worthless check cases. After the presentation of evidence by a law enforcement officer, a magistrate may issue search warrants and arrest warrants, which directly affect a party's liberty interests. When a magistrate enters an order for contempt, as Magistrate Fisher did here, it is based on a magistrate's own observations of the party in contempt. The order itself carries penalties including fines and imprisonment. N.C. Gen. Stat. § 5A-12 (2015).
 

 The nature of our state constitution and general statutes also indicates that magistrates are intended to be a court. Significantly, magistrates are created in the same constitutional article as the state's judicial branch and are declared officers of the district court. The laws that establish the confines of magistrates-such as method for appointment, qualifications, age limits, hours, and salary-are listed in the same chapter of the general statutes as the laws of the judicial department. Moreover, the rules governing the removal and retirement of magistrates are the same as those for any judge of the appellate, superior, or district courts.
 
 In re Kiser
 
 ,
 
 126 N.C. App. 206
 
 , 208,
 
 484 S.E.2d 441
 
 , 442 (1997). Thus, a magistrate appears to be a tribunal according to the definition set forth in Rule 1.0 and applied in Rule 3.5.
 

 *118
 
 Defendant first contends that a magistrate does not constitute a tribunal here because the signage at the detention center only indicated an office and not a court. However, whether the signs indicated an office or a court is not dispositive of this issue. Depending on the jurisdiction, a magistrate in this state may have a courtroom or an office. Conley & O'Barr,
 
 Fundamentals of Jurisprudence
 
 , at 477. Defendant also argues that a magistrate is not a tribunal because the comments to Rule 3.5 indicate that a judge, as opposed to a judicial official, presides over a tribunal. This assertion is simply incorrect. Although comment 8 to Rule 3.5 states that "a lawyer should not communicate with a judge relative to a matter pending before ... a tribunal over which the judge presides," a great leap in logic is required to conclude from this comment that a tribunal only exists when presided over by a judge.
 

 For the reasons stated above, we find defendant's contention that a magistrate is not a tribunal to be unpersuasive. We therefore hold that the DHC did not err in concluding that defendant disrespected a tribunal in violation of Rule 3.5(a)(4)(B).
 

 *924
 
 B.
 
 Rule 8.4(d) Violation
 

 Rule of Professional Conduct 8.4 states that "[i]t is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice[.]" N.C. R. Prof. Conduct 8.4(d). Defendant does not deny her conduct itself; rather, she contends that the DHC "rendered wholly conclusory findings of fact" that her conduct harmed the administration of justice and interfered with the ability of the magistrates to perform their duties on the night at issue. We disagree.
 

 "Threats, bullying, harassment, and
 
 other conduct serving no substantial purpose
 
 other than to intimidate, humiliate, or embarrass anyone associated with the judicial process including judges, opposing counsel, litigants, witnesses, or court personnel violate the prohibition on conduct prejudicial to the administration of justice." N.C. R. Prof. Conduct 8.4, cmt. 5 (emphasis added).
 

 A showing of actual prejudice to the administration of justice is not required to establish a violation of paragraph (d). Rather, it must only be shown that the act had a reasonable likelihood of prejudicing the administration of justice.... The phrase "conduct prejudicial to the administration of justice" in paragraph (d) should be read broadly to proscribe a wide variety of conduct, including conduct that occurs outside the scope of judicial proceedings.
 

 *119
 
 N.C. R. Prof. Conduct 8.4, cmt. 4. Rule 3.5, which prohibits disrespectful conduct toward a tribunal as described above, discusses similar conduct.
 

 Therefore, the prohibition against conduct intended to disrupt a tribunal applies to conduct that does not serve a legitimate goal of advocacy or a requirement of a procedural rule and includes angry outbursts, insults, slurs, personal attacks, and unfounded personal accusations as well as to threats, bullying, and other attempts to intimidate or humiliate judges, opposing counsel, litigants, witnesses, or court personnel.... "Conduct of this type breeds disrespect for the courts and for the legal profession. Dignity, decorum, and respect are essential ingredients in the proper conduct of a courtroom, and therefore in the proper administration of justice."
 
 Attorney Grievance Comm'n v. Alison
 
 ,
 
 317 Md. 523
 
 , 536,
 
 565 A.2d 660
 
 , 666 (1989).
 

 N.C. R. Prof. Conduct 3.5, cmt. 10.
 

 In
 
 Attorney Grievance Comm'n v. Alison
 
 , the defendant was found guilty of misconduct by the Maryland State Bar for,
 
 inter alia
 
 , directing vulgarities and profanities at two judges separately in open court, opposing counsel in open court, and two clerks of court.
 
 317 Md. at 536
 
 ,
 
 565 A.2d at 666
 
 . The defendant appealed and alleged that his conduct was not prejudicial to the administration of justice.
 

 Id.
 

 at 525
 
 ,
 
 565 A.2d at 661
 
 . The Maryland Court of Appeals disagreed, reasoning that it does not matter if the conduct "delay[s] the proceedings or cause[s] a miscarriage of justice" because "[c]onduct of this type breeds disrespect for the courts and for the legal profession."
 

 Id.
 

 at 536
 
 ,
 
 565 A.2d at 666
 
 . With respect to the clerks, the court determined the analysis is the same even though clerks do not have courtrooms.
 

 Id.
 

 at 538
 
 ,
 
 565 A.2d at 667
 
 . The court ultimately upheld the defendant's disciplinary sanctions, noting "[i]t is not difficult to visualize the damage to the court system and to the reputation of the legal profession that would result if attorneys were free to conduct their daily business with court clerks in the manner employed by [the defendant]."
 

 Id.
 

 Defendant's case is similar to
 
 Alison
 
 . Here, defendant made vulgar and profane statements toward and in the presence of Magistrate Fisher, who is a judicial officer of the district court. As to defendant's criminal contempt conviction, this Court reversed her conviction on procedural grounds while expressing serious concern with defendant's underlying behavior, which is at issue in this action.
 

 *120
 
 We are, however, very troubled by defendant's use of profanity in the magistrate's office while conducting court-related business despite warnings by the magistrate about the inappropriate language. Such disrespect, particularly by an attorney familiar with proper courtroom practices, is wholly inappropriate.... Given defendant is a lawyer practicing in our State's courts, we find defendant's attitude offensive and incomprehensible.
 

 *925
 

 Foster
 
 ,
 
 2013 WL 2190072
 
 , at *8. We again emphasize that defendant's conduct-regardless of whether it occurred in a courtroom or a magistrate's office-was clearly offensive and inappropriate. Further, there is a reasonable likelihood that such conduct encourages disrespect for our court system and damages the reputation of the legal profession. We thus hold that the DHC did not err in finding that defendant exhibited conduct prejudicial to the administration of justice in violation of Rule 8.4(d).
 

 III. Conclusion
 

 Because the definitions and core functions of tribunals and magistrates are similar, and in light of the nature of our state constitution and general statutes, the DHC did not err in finding that defendant disrespected a tribunal in violation of Rule of Professional Conduct 3.5(a)(4)(B). Additionally, because defendant disrespected a judicial officer and damaged the reputation of the legal profession, the DHC did not err in finding that defendant exhibited conduct prejudicial to the administration of justice in violation of Rule of Professional Conduct 8.4(d). Accordingly, we affirm the disciplinary order of the DHC.
 

 AFFIRMED.
 

 Judges DIETZ and INMAN concur.